PATRICK GIBSON
vs.
JOS. W. FINLEY AND OTHERS.

} December Term, 1853.

[equitable assignment.]

A debtor residing in San Francisco sent, by letter, to his agent in Baltimore, two drafts on New York and one on Baltimore, with request to collect them, and pay the proceeds to certan creditors specified in the letter, with the respective sums due each, and also gave those creditors orders on his agent for the sums due them. One of these orders was payable out of the proceeds of the New York drafts, the others out of both the New York and Baltimore drafts, but none of them were accepted by the agent. The Baltimore draft being dishonored, the holder of the order on the New York drafts claimed the payment of it in full out of the proceeds thereof to the exclusion of the others. Held—That the proceeds of the New York drafts should be paid, *pro rata*, among all the creditors mentioned in the letters.

It is the invariable effort of a court of equity to do equal justice to all by a ratable distribution of the fund under its control, when not prevented from so doing by the plain and explicit terms of the instrument with which it has to deal.

Where an order is drawn for the *whole* of a particular fund it amounts to an equitable assignment of that fund, and after notice to the drawee, it binds the fund in his hands.

But where the order is drawn, either on a general or particular fund, *for a part* only, it does not amount to an assignment of that part, or give a lien as against the drawee, unless he assent to the appropriation by an acceptance of the draft, or an obligation to accept may be fairly implied from the custom of trade in the course of business between the parties, as a part of their contract.

If a creditor is pursuing two remedies when only one is open to him, chancery may, upon application, compel him *to elect*, but until this is done, his pursuit of both will not deprive him of either.

[Jos. W. Finley, formerly of the city of Baltimore, but at the time of the filing of this bill, a resident of San Francisco, California, being indebted to various persons in the former city, transmitted in a letter, dated 31st of March, 1850, to Patrick Gibson, of Baltimore, three several drafts, two of which amounting to $7000 were drawn upon bankers in the city of New York, and the other for $5000 upon A. J. Bowie, of Baltimore. This letter, after specifying the drafts, requests Gibson to collect them and distribute the proceeds among certain creditors, a list

of whom is given, with the respective sums due them, amount-in all to $11,964 36.

At the same time he forwarded to the several creditors, specified in the letter, orders, all dated 31st of March, 1850, upon Gibson for the respective amounts due each of them. The following is a copy of the order in favor of Rieman & Sons, one of said creditors.

"SAN FRANCISCO, 31st *March,* 1850.

P. GIBSON, Esq.

Pay to order of H. Rieman & Sons, out of proceeds of draft to your address, of A. M. Van Nostrand, on Ward & Price, (bankers,) New York, eleven hundred dollars, and oblige your ob't serv't,                                    Jos. W. FINLEY."

The form of the orders to all the other creditors was to pay "out of any money collected from drafts on New York and Baltimore."

The drafts on the bankers of New York were duly paid at maturity, that on Baltimore was dishonored and protested, and Gibson refusing to accept or pay any of these orders, filed his bill of interpleader against Finley and the several creditors, praying that they might be required to interplead and settle their rights as to the fund in his hands, the proceeds of the New York drafts, and for an injunction restraining them from suing or otherwise troubling him in relation thereto. The opinion of the Chancellor was delivered in this case on the 4th of March, 1854.]

———

THE CHANCELLOR:

But a single question of law is submitted in this case, and that arises upon a state of facts about which there is no dispute.

Upon a careful consideration of these facts, and the written arguments of the solicitors of the parties, I am of opinion, that the money received by the complainant upon the New York drafts should be distributed, *pro rata,* among the creditors mentioned in the letter of Joseph W. Finley to him, of the 31st of March, 1850.

Assuming that letter as one of instructions, which Mr. Gibson was required to obey, there would be no doubt of the right of the creditors enumerated in it, to participate equally and ratably in the money collected upon the drafts. That letter undoubtedly put them each and all upon an equality and to give a preference to any one over the rest in case of a deficiency, would not only contravene the plain intent and meaning of the writer, but would defeat the invariable effort of the court to do equal justice to all by a ratable distribution of the fund under its control, when not prevented from so doing by the plain and explicit terms of the instrument with which it has to deal.

The case of *Cross et al* vs. *Cohen*, 3 *Gill*, 257, illustrates very strongly the desire of chancery in administering funds under its control to give an equal portion to each creditor, and would be decisive of this case if the rights of the parties depended entirely upon the letter. But it appears that cotemporaneously with the letter, Mr. Finley gave to each creditor mentioned in it an order on Mr. Gibson to pay the sum due him. The orders are all dated on the same day, 31st of March, 1850, and the only difference in them is that the one in favor of H. Rieman & Sons is payable only out of the proceeds of the drafts on the New York House, whilst those given to the other creditors are payable out of any money to be collected upon the drafts on New York and Baltimore. And the draft drawn on Baltimore having been dishonored and those on New York having been paid, but being inadequate to pay the claims of all the creditors, it is insisted on the part of Rieman & Sons, that they are entitled to a preference over the other creditors, that is, that their entire claim must be paid out of the proceeds of the drafts on New York, and the balance only distributed among the other creditors.

It is urged on their part that they have nothing to do with the letter from Finley to Gibson, that their right to payment rests upon the draft, which was sufficient to operate an equitable assignment of the fund in question, and that by force of it, they are entitled to be paid out of that fund to the exclusion of the other parties.

The order in favor of Rieman & Sons, it will be observed, was not drawn for the whole fund to be received on the New York drafts. It was payable out of the proceeds of those drafts, and, therefore, it is by no means clear that it did operate an equitable assignment of the fund, and after notice to the drawee, bind the fund in his hands. In the case of *Tiernan and others* vs. *Jackson*, 5 *Peters*, 597, in speaking of the effect of such assignments, the court observed, that in the case of *Mandeville* vs. *Welsh*, 5 *Wheat. Rep.*, 277, 286, it was said "that in cases where an order is drawn for the *whole* of a particular fund it amounts to an equitable assignment of that fund, and after notice to the drawee, it binds the fund in his hands. But where the order is drawn, either on a general or particular fund, *for a part* only, it does not amount to an assignment of that part, or give a lien as against the drawee, unless he consent to the appropriation by an acceptance of the draft, or an obligation to accept may be fairly implied from the custom of trade in the course of business between the parties as a part of their contract."

In this case there is no pretence that Mr. Gibson ever consented to the appropriation in favor of Messrs. Rieman & Sons, either by an acceptance of the draft held by them, or in any other way, and certainly no obligation to accept can be implied from the course of trade between them. On the contrary, the complainant, as shown by the whole record, has certainly refused to involve himself in any manner with the conflicting pretensions of these parties, or to come under any obligation to any one of them, leaving them to litigate and settle their rival claims among themselves.

But conceding that the order to Rieman & Son did amount in equity to an assignment, though it was only for a part of the fund, according to the view of *Mr. Justice Story*, in 2 *Com. on Eq.*, *section* 1044, still, in my opinion, they would only stand on a footing of equality with the other creditors.

If the order in favor of Rieman & Sons amounts to an assignment in equity, the orders in favor of the other parties have the same effect. They are all dated on the same day, and the only

difference is that the former is payable exclusively out of the proceeds of the New York drafts, whilst the latter are payable out of them and the Baltimore draft, and I can see no reason why the dishonor of the last should place the holders of the drafts, other than Rieman & Sons, upon more unfavorable ground than they occupy with respect to the drafts on New York which were paid.

In this view of the case they are all assignees in equity of the fund received by Mr. Gibson on the New York drafts. It is true, the other creditors hold another security, but that, without their default, has turned out to be worthless. But why should this weaken their claim against the New York fund or postpone them to a creditor whose claim against, or lien upon, the fund is contemporaneous in time and created by an instrument similar to those held by them?

It is urged by the solicitor for Rieman & Sons, that the preference claimed by them is equitable, because, if the Baltimore draft had been paid, and those on New York dishonored, they would have been entirely excluded. This may be so, and probably looking alone to the orders themselves and throwing out of view the letter of instructions, is so. But why so? Simply because their order was payable out of that particular fund, and that only, whilst those held by the other parties out of that same fund and another likewise. The additional security of the Baltimore fund could not impair their claim to be paid out of the New York fund if the former proved unavailing.

The solicitor for some of the creditors goes further and says, that Rieman & Sons, by issuing an attachment from the Superior Court of Baltimore city against Finley as a non-resident debtor, have forfeited their right to any portion of the fund in question. That it amounts to a renunciation of their claim under the order and letter of instructions of the 31st of March, 1850.

It might be a sufficient answer to this view to say, that there is no evidence before the court of the attachment, or for what it issued, if it did issue. But if there was, it would not, as I think, deprive the creditor of his right to participate in the

fund. If a creditor is pursuing two remedies when only one is open to him, chancery may, upon application, compel him *to elect*, but until this is done, his pursuit of both will not deprive him of either. Here these parties have certainly not been called upon to elect, and the circumstances (even if the proof existed) that they are proceeding by way of attachment would not deprive them of the right to come in under this bill of interpleader and ask for their share of the fund.

[An order was then passed directing the division of the fund, *pro rata*, amongst the creditors specified in the letter of Finley of the 31st of March, 1850.]

JOHN NELSON, for Rieman & Sons.
WALLIS, THOMAS and NORRIS, for other Creditors.