F. J. Vanbibber & Co. *v.* The Bank of Louisiana.

A bank is liable to the payees of a check made payable to their order, when the check is paid on a forged endorsement made by the collector of the payees, who receives the check in payment of a bill of merchandize intrusted to him for collection by his employers.

APPEAL from the Fifth District Court of New Orleans, *Eggleston,* J.

  *H. M. Spofford,* for plaintiffs. *Levi Peirce,* for defendant.

Cole, J. *Messrs. Roche & Esclapon,* having purchased a lot of sugar of plaintiffs, the latter sent, on the 30th November, 1858, their collector, *J. F. Butler,* to collect the price thereof.

The purchasers gave their check for $1,335 98, the amount of the bill, on the Bank of Louisiana, payable to plaintiffs or order.

The collector appears to have forged the signature of the payees, and to have presented the check personally, or by a third party, to the bank, upon the day of its execution, and then to have absconded with its proceeds.

This action is to compel the bank to pay to the payees the amount of the check.

There was judgment for plaintiffs, and defendant has appealed.

The first question that arises is, whether the plaintiffs were the owners of the check?

It is contended that they were not, because the duty of the collector was to have received only current money in payment of the bills for the sugar, and the plaintiffs would have had the right to have disavowed the act of their collector.

The plaintiffs were called upon by defendant, to answer interrogatories, and, in answer to a cross-interrogatory, testify that they " collected their money through checks, and made disbursements in the same way; that their collector had no instructions, at the time he presented the bill, as to the manner of receiving payment.

It having been the custom of plaintiffs to receive the payment of their bills by checks, they could not, with any grace, have disavowed the action of their collector.

Besides, even if the action of the collector in taking a check were unauthorized, his principals had the right to ratify it, if they desired, and they have so ratified it by bringing this suit.

The title of the check was, therefore, in plaintiffs.

The drawers of the check were accustomed to have deposits of funds at the bank, and to draw occasionally against the same.

The drawers in this check requested the bank to pay its amount to plaintiffs or order. The bank had no right to pay it to any other person. It has, however, paid it upon a forged endorsement, and the amount of the check must be considered to be still in the bank, subject to the rights of plaintiffs.

A depositor in a bank has the right to suppose that the bank will only pay out his money upon his own signature or that of his agent, and upon the conditions specified in the check. The party receiving a check drawn by a depositor is actuated by this confidence and belief, and takes a check with the understanding that it shall be paid only to his order, or as specified in the check.

In this case, no negligence is shown on the part of plaintiffs. The collector

61

had been known to one of the firm several years, and had been in their employ six months, and had always maintained a good character for honesty and proper deportment, until his sudden disappearance, on the 30th of November.

If there was negligence anywhere, it was upon the part of the bank. Their duty to their depositor required them to be satisfied that the endorsement of the check was that of the payees.

Besides, it is usual with merchants to deposit checks, payable to their order, in banks, in which they keep their accounts with their proper endorsement, as so much cash; and it is proved that such was the custom of plaintiffs. The unusual course, of demanding payment of the check, ought to have awakened the attention of the bank.

It appears also, that plaintiffs never had any account in the Bank of Louisiana, and that the signature of the firm is not on the signature book of the bank. It was, then, great laches to pay the check, without being properly satisfied of the genuineness of the endorsement.

It is also established, that the collector was never authorized by plaintiffs to endorse any check drawn to the order of the firm, or any check.

Plaintiffs also made search for the collector, and telegraphed to all points for his arrest, and sent a person to Jackson, Mississippi, in search of him. The collector took, besides the proceeds of the check, forty dollars from the safe of plaintiffs.

Art. 2966 of the Civil Code requires the power to endorse bills of exchange or promissory notes to be express and special; but defendant contends that a check is not a bill of exchange, and that this Article applies to *written powers of attorney.* Story, Prom. Notes, § 489.

It is true that bills of exchange differ, in many important particulars, from checks; yet, even without this Article, the collector would not have been empowered to have endorsed the check for plaintiffs, without showing that it was within the scope of his agency as collector; otherwise, no one would be safe from ruin. Edwards on Bills and Notes, p. 396; *Chapman* v. *White*, 2 Selden Rep., 412.

There was an implied engagement, upon the part of the bank, to pay to third parties the checks drawn in their favor by depositors, and thus there was a privity of contract between the plaintiffs and the bank.

*Butler* having been authorized to collect the bill, and the usual way being the receipt of a check, the check was, then, received for plaintiffs, and his possession was that of plaintiffs. The forgery of the check did not divest them of the right of property in the check, which could only properly be paid to their order.

*Butler* could not, by exceeding the limits of his authority, acquire any interest in the check which could injure plaintiffs.

Defendant contends that the bank is not liable to the payee of a good check, which it has obtained under a forged endorsement, and that its only liability is to the drawer, whose name is on its signature book.

The banks having consented to pay the deposits of their depositors on their checks, have thus tacitly agreed to pay them to the payees, and they are bound to know that the checks are paid to the real payees, or their agents, as long as they permit their depositors thus to draw checks and thus to make payments to their creditors. Otherwise, creditors would be liable to be defrauded.

*Butler* was never entrusted with the power of drawing checks, and there is no reason why the loss should fall upon plaintiffs. The bank could have prevented the loss and caused the arrest of *Butler*, by verifying the signature.

It does not appear whether the bank paid to *Butler* or to a stranger, or that any caution was used in asking his name or a reference. If to *Butler*, it is not shown that he was known, or that they knew him to be the clerk of plaintiffs.

The bank receiving the money of plaintiffs, not on special deposit, but subject to being checked for, acquires a benefit, as it has the use of the money; and in consideration, and also to oblige their customers, agrees to pay it out as ordered by the depositors, but in this case they have not obeyed their order, but contravened it, in paying it to a different person than the payees.

*Esclapon & Roche* acted with prudence, for they made the check payable to the order of plaintiffs, as is generally the case in such payments; for then the debtor knows that they cannot lose, and that the creditor cannot be defrauded.

If the defendant were not responsible, it would put innumerable obstacles in the way of business, and all to prevent the banks being at the little trouble of asking the person presenting the check for a reference, or to verify the signature, if it is unknown.

The bank becomes the agent of the debtor to pay the check. In agreeing to pay it, they agree to pay it to the right person. If they do not wish to do this, their duty is to refuse to pay. But in accepting the agency, which is for a consideration, they subject themselves to the rules and obligations of agents, and can be sued directly by the creditor of the debtor, who is the holder of the check.

It is true, that checks made payable to fictitious payees, or persons not *in esse*, and purporting to be endorsed by them, are deemed to be checks payable to bearer so far as relates to the drawer. But plaintiffs had a real existence, and the check ought to have been endorsed by them before it was paid by the bank. *Wilcox* v. *Beal*, 3 An. 407; *Smith* v. *Mechanics' and Traders' Bank*, 6 An. 624; *Etting* v. *The Commercial Bank of New Orleans*, 7 R., p. 462; *Morgan* v. *Bank of State of New York*, 1 Duer, 434, (affirmed in 1 Kernan, 404, p. 6, Spofford's cases); *Laborde* v. *The Consolidated Association*, 4 Rob. 193.

The bank holds the money of its depositors subject to be checked for as their agent. When, then, the bank receives a check, instructing them to pay a certain part of the deposit of the drawer to a third party, and the bank agrees so to do by its general custom, and by undertaking to pay it upon the supposed endorsement of the third party, the amount of money represented by the check, and on deposit as that of the drawer, becomes *eo instanti* the property of the payee, and the bank, from the moment it undertakes so to pay the check, holds the amount of the check as the agent of the payee, and is responsible to the payee, as his agent, if he pays it upon a forged endorsement. The bank also holds the amount of the check as the agent of the drawer, and undertakes, as his agent, to hold the amount of the check no longer as the agent of the drawer, but as that of the payee; so that, either the drawer or the payee can maintain an action against the bank, unless one of them has deprived himself of the right by some action of his own.

Judgment affirmed, with costs.