## Case No. 17,085.

WALKER v. SEIGEL et al.

[12 N. B. R. 394;[1] 2 Cent. Law J. 508.]

District Court, E. D. Missouri. Feb. 11, 1875.

JURISDICTION IN BANKRUPTCY — ENJOINING SUITS IN STATE COURTS—EQUITABLE ASSIGNMENT.

1. Creditors of a bankrupt holding an order obtained before bankruptcy, on a general fund, acceptance thereof having been refused, though holding an equitable assignment of the fund pro tanto, will be restrained from prosecuting their suit, after bankruptcy, against the managers of the fund, in the state court.

[Cited in Re Smith, Case No. 12,990.]

[Cited in Grammel v. Carmer, 55 Mich. 213, 21 N. W. 424.]

---

[1] [Reprinted from 12 N. B. R. 394, by permission.]

2. The bankrupt himself, before bankruptcy, or his assignee after bankruptcy. is a necessary party to a suit in equity on such an order, and the bankruptcy court has exclusive jurisdiction for the determination of all questions pertaining to the bankrupt's estate.

[Cited in German Sav. Inst. v. Adae, 8 Fed. 108.]

[This was a bill by William R. Walker, assignee in bankruptcy of Morris H. Fitzgibbon, to restrain the defendants, Seigel & Bobb, from prosecuting a suit in a state court.]

TREAT, District Judge. The bill prays for an injunction to prevent the prosecution of a suit by Seigel & Bobb, in the Buchanan circuit court, and against the other defendants. The managers of a state lunatic asylum, in their capacity as such state officers, had in their possession a large sum of money applicable to the payment of debts due [Maurice H.] Fitzgibbon, the bankrupt. The latter, before bankruptcy, gave an order on said managers to pay ten thousand dollars to Seigel & Bobb, to whom Fitzgibbon was indebted for work and materials furnished. The order was duly presented and acceptance and payment refused. The managers had full notice thereby of the existence of said order.

An examination of the authorities shows that at the present time the general rules governing such cases are: First. That a draft or check does not operate as an assignment of the funds unless accepted,—so that the holder can sue the drawee in his own name. There is no privity between the holder and drawee, and this obtains whether the funds are general against which the draft is made, or the fund is specific. Second. An order drawn for the whole of a particular fund, is an equitable assignment of the fund, and after notice to the drawee binds the funds in his hands. In such a case it seems that a suit in assumpsit may be maintained in the name of the assignor to the use of the assignee. Third. An order drawn on a general or particular fund for a part only, does not amount to an assignment of that part, or give a lien as against the drawee, unless he accepts. That rule, as thus broadly stated, seems to apply only to cases at law. Such an order, so soon as notice is given to the drawee, works an assignment in equity. In a few states, from the peculiar character of their practice, a direct action could be had by the assignee in his own name, or in the name of the drawer, to the use of the holder. The general doctrine, however, is as stated in Gibson v. Cooke, 37 Mass. [20 Pick.] 15, and Christmas v. Russell, 14 Wall. [81 U. S.] 69. The holder is driven to his suit in equity, where the interests of all concerned in the fund can be disposed of at the same time. The rule in Mandeville v. Welch. 5 Wheat. [18 U. S.] 277, has never been departed from in United States courts; but that rule, and the reasons on which it rests, pertain solely to actions at law.

In equity, partial assignments of the fund are recognized, because the drawee is subjected to only one suit. True, in some states a suit in the name of the assignor for the use of one or more assignees has been upheld, on the theory that the assignor may recover from the drawee all funds of the assignor in the latter's hands, and while the equitable interest of the assignee or assignees will be thus protected, the drawee will be subjected to only one suit. But it is apprehended that such rulings are wholly inconsistent with the doctrine that, in United States courts, pure equity proceedings cannot be, and are not, modified by state modes of practice. If the rights of a party are cognizable alone in equity, he must proceed accordingly.

In law courts, as actions of assumpsit proceed on an express or implied promise or undertaking by the defendant in favor of the plaintiff, that privity must exist. In the absence of such promise or undertaking, where notice of the order is given, many state courts have held that suits in the name of the assignor to the use of the assignee, may be maintained at law, whether the order was for the whole or part of a fund in the hands of a drawee. This court sitting under a different system as to equity causes, must compel persons who have no assignments or liens, except in equity, to pursue their remedies solely in equity.

But it is contended that as Seigel & Bobb had an assignment in equity of this fund pro tanto, they had a right to sue therefor in their own names in the state court, where by force of the state statutes they could proceed accordingly, there being no distinctions in form as to legal and equitable proceedings. If their right so to do were irrespective of any supervision or jurisdiction of a United States court, the proposition might be correct. In this case, as presented, it appears that Fitzgibbon was adjudicated bankrupt; that thereafter Seigel & Bobb proved a demand against the bankrupt's estate for thirteen thousand dollars, ten thousand dollars of which was secured (as above set out) and the other three thousand dollars unsecured. Thereupon, without leave had from this court sitting in bankruptcy, and without making the assignee in bankruptcy a party, they instituted in a state court, according to the mixed state practice, an action as assignees in equity for the sum of ten thousand dollars against the other defendants (the drawees), said sum being part of the fund in the hands of the latter.

If the foregoing rules are correct, then the bankrupt in person, who was the assignor, or his assignee, would in equity be a necessary party, and the managers would have a right to cause the other claimants of the fund, if any, to interplead. But it is urged that after the order drawn and notice to the drawees, Fitzgibbon was in equity only a trustee for the payees, and therefore his interest did not pass to his assignee in bankruptcy. It is certainly correct that property held merely in trust by the bankrupt does not pass to his assignee; but it is also true that if he has an interest, or if his trust is coupled with an interest, then

his assignee in bankruptcy is vested with said interest. Here, however, we have by the bankrupt act [of 1867 (14 Stat. 517)] exclusive jurisdiction for the determination of all such questions when they arise, vested in the court which has charge of the bankrupt's estate. If a person holding a mortgage, or deed of trust, or collaterals of any kind, to secure an alleged debt, can, regardless of the court in bankruptcy, proceed to dispose of the same, without question, and without the knowledge or consent of said court, or without having the validity of his debt, or of the security, passed upon by said court, then there will be no practical force given to the many important provisions of the act of congress, designed to vest in the United States court exclusive jurisdiction of all such questions. This court rules, therefore, that the plaintiff is entitled to the injunction prayed for, and that the prayer of the managers for the other claimants of the fund in their hands to be cited in to interplead ought to be granted. They are entitled to be thus protected. The orders will be accordingly.

