Williams, J.
The original action was brought in the ■ Court of Common Pleas of Cuyahoga county, by John A. Covert, against J. H. Rhodes as assignee for the benefit of creditors of Crumb & Baslington. The substantial averments of the petition are, that Crumb & Baslington, a banking firm in the city of Cleveland, on the 22d day of June, 1887, drew their draft on The Importers & Traders National Bank of New York city, for the sum of one thousand dollars, payable to the order of the plaintiff. The amount then due *70 the firm from the drawee, exceeded that for which the draft was drawn. Through successive indorsements, the draft reached the National Bank of Commerce of New York city, on the 6th day of July, 1887, and was then presented by it for payment. In the meantime, on the 24th day of June,, 1887, Crumb & Baslington made an assignment of all their property to the defendant for the benefit of their creditors. Notice of the assignment having reached The Importers & Traders Bank prior to the presentation of the draft, payment was for that reason refused, and the whole amount standing to the credit of Crumb & Baslington was' afterwards paid over to the defendant. The plaintiff sought by his action, to compel the defendant to pay him the amount of the draft. A general demurrer to the petition was sustained, and judgment rendered for the defendant. The affirmance of that judgment by the circuit court, is the matter of complaint here.
Unless the draft, before presentation, constituted an equitable assignment of a part of the amount due Crumb & Baslington from the bank on which it was drawn, equal to the sum it called for, and thus vested the title thereto in the plaintiff, it is clear his action could not be maintained; for, if the unaccepted draft did not so operate, the title to the whole amount standing to the credit of Crumb & Baslington, with every right which their creditors could have asserted against it at the time the assignment was made to the defendant, vested by virtue of the assignment, in the assignee, for the equal benefit of all the creditors. Blandy v. Benedict, 42 Ohio St. 295. The practical question, then is, whether the unaccepted draft for a part only of the amount due the drawer, gave the payee or holder, priority over the other creditors of the drawer. We are of the opinion that it did not. ■ Some cases and textwriters, we are aware, maintain with much earnestness, the position taken by the counsel for the plaintiff, that a draft or bank check for part of the amount due the drawer, is an equitable assignment pro tardo, giving the payee or holder, an equitable property in the fund, which may be pursued as long as it can be certainly identified, ex *71 cept into the hands of third persons who have acquired possession of it for value, and without notice. But the great weight of authority is, we think, the other way.
Mr. Pomeroy, in his work on Equity Jurisprudence, section 1284, says that: “ An ordinary bill of exchange or draft drawn generally and not upon any particular fund, whether accepted or not by the drawee, does not operate as an equitable assignment. Its operation is not changed even when funds have been placed in the drawee’s hands as a means of payment; for the drawee may apply these funds to another use, and although this act might violate his duty to the drawer, the payee would obtain no interest in or claim upon the specific fund. According to the great preponderance of authority, a check is in this respect a bill of exchange, and does not act as an equitable assignment of a portion of the drawer’s deposit equal in amount to the face of the cheek.” According to the same author, in order that the doctrine of equitable assignment may apply, there must be a specific fund upon which the assignment may operate, and, “ the sure criterion ig whether the order or direction to the drawee, if assented to by him, would create an absolute personal indebtedness payable by him at all events, or whether it creates an obligation only to make payment out of the particular designated fund.”
The obligation of a bank to its general depositors, is not that of bailee or trustee, but that of debtor simply. It does not agree to pay checks or bills drawn on it out of any particular fund, nor does it retain any particular fund for that purpose. As said by Mr. Justice Davis, in Bank of Republic v. Millard, 10 Wall. 152, 155, when deposits are received by the bank, “ unless there are stipulations to the contrary, they belong to the bank, become part of its general fund, and can be loaned by it as other money. The banker is accountable for the deposits which he receives as a debtor, and he agrees to discharge these debts by honoring the checks which the depositor shall from time to time draw on him. The contract between the parties is purely a legal one, and has nothing in the nature of a trust in it.” *72 The authorities are, without exception, to that effect. There is little, if any conflict of authority upon the proposition, that on notice of the' drawer’s death, before acceptance, by the bank, its right to pay the bill or check ceases, and its indebtedness to the drawer becomes assets of his estate. The reason, we apprehend, is, not because the bank is the agent of the drawer for the disbursment of a particular fund, and the agency is terminated by the death of the principal, but because, before acceptance, the title remains in the drawer, and devolves immediately on his death, upon his personal representative by operation of law. The authorities are also nearly uniform to the effect, that the holder of such draft or check cannot maintain an action against the drawee without the latter’s acceptance. The reason given, is, that without acceptance there is no privity between them. It would seem clear, that if before acceptance, the check or draft operated as an equitable assignment pro tanto, such action might be maintained; for, an equitable assignment transfers the fund, and the refusal of the drawee to pay, would be a conversion by him of the payee’s property, for which suit might at once be brought.
The subject has been discussed in all its bearings, in the various reported cases, and without extending the discussion here, our conclusion is, that a check or draft for a part only of the sum due the drawer, does not, before acceptance, constitute an equitable assignment of the amount for which it is drawn ; and, where, after it is drawn, the drawer makes an assignment of all his property for the benefit of his creditors, notice of which is received by the drawee before acceptance, the property in the whole amount then remaining to the credit of the drawer, passes to the assignee, for the equal benefit of all the creditors, and the holder of the check or draft, has no priority over the other creditors. We concur with Mr. Justice Miller, in his opinion in the case of the Laclede Bank v. Schuler, 120 U. S. 515, 516, that “ it is not easy to see any valid reason why the assignment of an insolvent debtor, for the equal benefit of all his creditors, and all his property, does not confer on those creditors an equity *73 equal to that of the holder of an unpaid check upon his bankers. The holder of this check comes into the distribution of the funds in the hands of the assignee for his share of those funds with other creditors. The mere fact that he had received a check, a few days before the making of the assignment, on the bank, which had not been presented until after the general assignment was made and notified to the bank, does not seem, in and of itself, to give any such superiority of right. The assignment was complete and perfect, and vested in the assignee the right to all the property of the assignor immediately upon its execution and delivery, with due formalities, to the assignee, and the check of this assignee .... could have been paid by the bank with safety, if first presented. The check given by the same assignor a few days before was only an acknowledgment of a debt by that assignor, and became no valid claim upon the funds against which it was drawn until the holder of those funds was notified of its existence. This, we think, is the fair result of the authorities on that subject.” Among the many cases which sustain this view, the following, are directly in point: Grammel v. Carmer, 55 Mich. 201; Dickinson v. Coates, Assignee, 79 Mo. 250; Bullard v. Randall, 1 Gray, 605; Attorney General v. Continental Life Insurance Company, 71. N. Y. 325; Kimball v. Donald, 20 Mo. 577; Loyd v. McCaffrey, 46 Pa. St. 410; Chapman v. White, 6 N. Y. 412; Dykers v. Bank, 11 Paige, 612; Hopkinson v. Forster, 19 L. R. Eq. C. 74; Moses v. Bank, 34 Md. 574.
While, however, we regard it as well settled that a draft. or check for a part only of the drawer’s deposit, or sum due him, does not operate as an equitable assignment, a different rule seems to obtain where an order, draft, or check is drawn for the whole amount of the deposit, or the exact sum due. There may be, in such case, it is said, a sufficient designation of the specific fund to be transferred, to constitute an equitable assignment. This distinction is made by many well considered cases. Among them: Moore v. Davis, 57 Mich. 251; Bank v. Railway Company, 52 Iowa, 378-384; Mandeville v. Welch, 5 Wheat. 277; Kingman v. Perkins, 105 Mass. *74 111; Macomber v. Doan, 2 Allen, 541; Robbins v. Bacon, 3 Me. 346; Gibson v. Cook, 20 Pick. 15-17.
In the opinion of the court in Moore v. Davis, supra, Cooley, C. J., discussing the distinction between the two classes of cases says: “ In ■ the recent case of Grammel v. Carmer, 55 Mich. 201, the question whether a draft was an assignment of the fund in the drawee’s hands, to the extent of the sum drawn for, was considered and decided in the negative. That, however, was the case of a banker’s draft, and it was not drawn for the whole fund in the drawee’s hands. Many cases were cited in the opinion filed in that case, and the following, not then cited, are to the same effect : Shand v. DuBuisson, L. R. 18 Eq. 283; Lewis v. Traders’ Bank, 30 Minn. 134; Jones v. Pacific Wood, etc., Company, 13 Nev. 359; Rosenthal v. Mastin Bank, 17 Blatchford, 318; Dolson v. Brown, 13 La. Ann. 551; Sands v. Matthews, 27 Ala. 399. But this case differs from Grammel v. Garmer in the fact that the draft now in question was drawn for the exact.amount of a sum claimed to be due from the drawees to the drawer for a bill of merchandise, and that the account was attached to the draft, evidently for the purpose of being sent forward with it. When thus sent forward, it would explain to the drawees the account on which it was drawn; but it must also have been understood to serve a further purpose, namely, to be evidence in the hands of the drawees that the account was paid when the draft was taken up by them. There could be no sufficient reason for attaching it at all, unless it was understood that payment of the draft would be payment of the account as well. By the general commercial law, as was said in Grammel v. Carmer, the purchaser of a draft is supposed to take it in reliance upon the responsibility of the drawer, and he has no other reliance until it is accepted. This is the general rule. But if the draft is for the whole amount of a fund, the draft may, in connection with other circumstances, tend to show an intent that it should operate as an assignment.”
Gardner v. The Nat’l City Bank, 39 Ohio St. 600, belongs to this latter class of cases. There, the draft was for the *75 exact amount due the drawer; and in the opinion, Johnson, C. J., carefully distinguishes the case from those in which the draft was drawn for a part only, of the amount owing by the drawee.
The judgment of the circuit court is in accordance with the views we have expressed, and is accordingly

Affirmed.