**UNION ELECTRIC LIGHT & POWER CO. v. CHEROKEE NAT. BANK OF ST. LOUIS et al.**

No. 10985.

Circuit Court of Appeals, Eighth Circuit.

Jan. 28, 1938.

James E. Carroll, of St. Louis, Mo., for appellant.

Ruby M. Hulen, of St. Louis, Mo., for appellees.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a decree dismissing a bill of complaint by which appellant sought a preference in payment from the assets of the appellee, an insolvent national banking association. The bank and its receiver were defendants below and are the appellees here. We shall refer to the parties as they were designated in the lower court.

The bank did business at St. Louis, Missouri. Prior to January 18, 1933, plaintiff had carried a general deposit or checking account with the defendant. About that time it ceased depositing any funds in the bank, but had left in its account about $1,-300. This was at a time when many of the smaller banks were suspending business or closing their doors. On January 18, 1933, the president of the bank wrote plaintiff, stating that he had observed that plaintiff had discontinued making deposits and expressed the hope that the bank might look forward to a redepositing in the account. About January 20th, the treasurer of plaintiff went to the bank, taking with him a draft of an agreement which he proposed to submit to the bank. The president of the bank explained that due to the general bank crisis then existing, many of the bank's customers in the vicinity where plaintiff maintained a branch store and branch office would take notice of the fact that plaintiff had discontinued transacting business with it and this would have "an effect on the people, and the bank wanted to guard against any pressure and runs on the bank." Plaintiff's treasurer, following some discussion as to the terms upon which plaintiff might resume its relations with the bank, showed the bank president a copy of the written agreement which he had brought

with him, and there was some conversation relating to payment or transfer of the deposit to plaintiff. Concerning this plaintiff's treasurer testified: "He (the bank's president) mentioned that there were a number of ways that could be brought down. He suggested that the most convenient thing for them would be by way of cashier's check. I told him we would have no objection to cashier's check, provided it would be understood that that represented our funds, that that was merely a method of getting our money to us."

A slight modification was made in the proposed agreement and as finally executed by the bank, with the approval of its board of directors, it provided that the plaintiff appointed the bank as its agent, "to collect and/or receive for the Company's account all sums of money due or payable to the Company from its agents, employees or debtors. * * * All funds so received by the Bank shall be promptly accounted for and remitted to the Company, in cash or exchange. The agent Bank's usual collection charges for its services in making such collections shall be paid promptly by the company upon statements rendered by the Bank.

"In the event of the agent Bank's failure to account for any funds received by it for the Company's account, the said funds shall be and remain the property of the Company, and if for any reason such funds cannot be identified all other assets of the Bank shall be impressed with a trust for the amount thereof, and the Company shall be entitled to a preferred claim upon such assets. The funds received by the agent Bank shall not be considered as a deposit with the Bank by the Company, and the Bank shall have no right or title with respect thereto. The funds, so received by the Bank as agent, shall not be subject to checks drawn by the Company. * * *

"The Company's funds held by the agent Bank shall at all times be kept separate as a special fund and never commingled with other funds of the Bank, nor shall the Bank at any time use, loan or borrow the same in any way.

"It shall, however, not be necessary for the Bank to keep the identical money received for the Company's account on hand, but moneys of an equal amount must always be maintained on hand as funds held by the Bank as agent belonging to the Company, and a special account thereof evidencing such fact shall at all times be maintained on the books of the Bank.

"Remittance of the proceeds of all collections made for the Company's account, whenever made by draft or check or by credit upon the books of another bank to the Company's credit, shall not be considered paid or returned to the Company until received by the Company in money, or by the actual and unconditional credit to the Company upon the books of such other bank. * * *"

The balance which the bank had on deposit at the time of the execution of this agreement was withdrawn by check, and thereafter the general plan was followed of delivering to the bank cash of plaintiff, the deposit being evidenced by a special form of receipt in substantially the following form:

"Cherokee National Bank of St. Louis

"The Cherokee National Bank of St. Louis hereby acknowledges receipt of the items listed below and accepts the same as agent for Union Electric Light and Power Company, a corporation, under agreement dated January 24, 1933, and now on file, and agrees to transmit said items to said Company promptly in accordance with the terms and conditions of said agreement."

Then follows statement of the deposit, showing the nature of same, whether currency, silver, gold, or coupons.

Following the execution of the agreement, plaintiff's treasurer wrote to the manager of the branch store of plaintiff, who had charge of the funds for that establishment, advising him of the terms of the contract under which the company would make deposits with the bank. In this regard the instruction states:

"Accordingly Cherokee branch store may resume delivery of cash to the Cherokee National Bank on Monday, January 23 for transmittal to our Cashier.

"Attached hereto is form of delivery ticket which the store employee will use in lieu of deposit ticket. The money will not be deposited in any account but will be delivered solely for transfer to us.

"Printed forms of delivery tickets will be supplied to the store as soon as we can have them printed. These should be made up in triplicate. The original will be retained by the employee who delivers the funds to the bank. The duplicate will be given to the bank and the triplicate will be promptly forwarded to Mr. King in the same manner as duplicate deposit tickets have heretofore been delivered. * * *

"The bank will render us statements for their service charges in connection with forwarding our funds under the new system."

The form of "delivery ticket" referred to is the same as above set forth.

Pursuant to the agreement, and beginning with January 24, 1933, plaintiff made daily delivery of cash funds to the bank, the funds being delivered by "Guarantee Service," accompanied by an employee of plaintiff. The cash, together with three copies of the delivery ticket, or deposit slip above described, would be tendered to the teller of the bank. Two of these tickets were signed by the teller and returned to plaintiff's employee, and one was kept by the bank. At approximately weekly intervals, the bank sent or delivered to plaintiff the bank's cashier's check for approximately the amount of the funds delivered in the previous week. Only cash was delivered. The actual cash was not segregated, but was placed with other funds of the bank.

On March 3, 1933, defendant issued to plaintiff its cashier's check for $9,328.55, being the balance in the bank belonging to the plaintiff at that time, and thereafter, on the same date, plaintiff made a further deposit in the bank of $2,558.72 in currency, silver and gold, following its usual practice under the foregoing agreement, receiving the special deposit delivery ticket or receipt therefor. Whether or not this particular deposit was commingled with other funds of the bank or was segregated is not shown by the testimony. The following day, March 4, 1933, the bank did not open due to a proclamation of the Governor of the State of Missouri. March 5th was Sunday. The bank did not open on March 6, 1933, due to the proclamation of the President of the United States. It did not reopen until March 15th, at which time its president was named as conservator, and on or about April 26, 1933 a receiver of the bank was appointed by the Comptroller of the Currency, who took over all its assets and property, including this deposit of $2,558.72, which augmented the funds of the bank in the hands of the receiver, and which at the time of trial was in the receiver's hands. In due time plaintiff filed written claim with the receiver, asking that it be given a preferred status. This the receiver refused, and this suit followed.

There is no dispute as to the facts. The lower court made findings of fact finding that the cash deposited by plaintiff was commingled with the general funds of the bank and not segregated; that during the time in question the defendant remitted funds received from plaintiff by cashier's check, which plaintiff accepted and cashed from time to time; and the court concluded as a matter of law that to entitle plaintiff to recover it was incumbent upon it "to show that the funds in question were received by the defendant bank with the agreement that said funds would be kept separate from the other funds of the bank, and the identical money returned to the depositor"; that the contract was in effect "an attempt by contract between plaintiff and defendant to pledge the assets of the defendant bank to secure a private deposit, and a national bank is without power to pledge its assets to secure a private deposit." The court also concluded that the relationship between plaintiff and defendant created by the contract was that of debtor and creditor. The court accordingly entered decree dismissing plaintiff's bill on the merits.

The question presented on this appeal is whether the court erred in not decreeing a preference in favor of plaintiff. Whether or not plaintiff was entitled to such a preference depends upon the character of the deposit. No question is raised but that defendant had authority to receive either general or special deposits. Generally speaking, a general deposit results where money or funds are delivered into the possession of the bank whose property it becomes and in return for which the depositor receives a credit, against which credit he may draw in the usual course of the bank's business. In the absence of an agreement or proof to the contrary, a deposit in a bank is presumed to be general rather than special, and the party claiming the deposit to be special has the burden of proof to show that it was received by the bank with the express or implied agreement that it should be kept as a special deposit. The nature or character of the deposit depends largely upon the intention of the parties to the transaction. It is apparent here that the parties intended that this should not be a general deposit, so that the question to be determined is whether or not their acts with reference thereto were such as to make it a general deposit, notwithstanding the intention of the parties. If a general deposit were intended, the written contract between the parties, the special deposit receipt specifically reciting the character of the depos-

it, and the instructions given the plaintiff's manager with reference to the method of handling these deposits would have been quite unnecessary.

The suit was tried on the theory that the commingling of the cash deposited with the general funds of the bank was inconsistent with the nature and character of a special deposit, and that the fact that "the defendant was not bound to return the identical money received by it from the plaintiff" made the deposit a general one. The findings of the court stress this fact. It must be conceded that this theory finds support in many of the earlier adjudicated cases. Any review or analysis of these cases would serve no useful purpose, because we are of the view that the Supreme Court has placed the matter at rest in the recent case of Jennings v. United States Fidelity & Guaranty Co., 294 U.S. 216, 55 S.Ct. 394, 397, 79 L.Ed. 869, 99 A.L.R. 1248, in which the court decided that the commingling of deposited funds with those of the bank is not fatal to the character of the deposit as a special one. In the opinion by Mr. Justice Cardozo, it is said: "Currency paid over the counter and deposited in a vault is a thing that can be identified and so subjected to a trust whenever in equity and conscience a trust should be implied. Not only that, but a trust so created will not fail though other dollars may have taken the place of those originally received, for dollars are fungibles and any one of them will be accepted as a substitute for another."

This is exactly what the contract between the parties contemplated and what was actually done pursuant thereto. It seems clear that when the funds were deposited under this agreement, they were impressed with a trust. When the bank issued its cashier's check as a means of transmitting these funds so specially deposited to the plaintiff, no further trust existed as to the funds represented by the cashier's check, and as to the cashier's check, the relation between the parties was that of debtor and creditor. Here, however, there was deposited the sum of $2,558.72 a few days before the bank closed. It was still in the bank when it closed; it went into the hands of the receiver and augmented the funds of the bank received by him. It was not subject to check by the plaintiff, and the defendant had not issued its cashier's check for the purpose of transmitting it to plaintiff. In these circumstances, the conclusion

seems inescapable that the deposit retained its character as a special deposit. The relation of debtor and creditor did not exist as to it. It was impressed with a trust in favor of plaintiff, and plaintiff was therefore entitled to have its claim allowed as a preferred one.

The decree appealed from is therefore reversed, and the cause is remanded with directions to enter decree in favor of plaintiff consistent herewith.