The NAVAJO TRIBE, Plaintiff,

v.

The BANK OF NEW MEXICO, a New Mexico corporation, Defendant and Third Party Plaintiff,

v.

The NAVAJO HOUSING AND DEVELOPMENT ENTERPRISE, an enterprise of the Navajo Tribe, Third Party Defendant.

No. CIV–77–777 JB.

United States District Court, D. New Mexico.

Feb. 28, 1980.

Rodey, Dickason, Sloan, Akin & Robb, Paul D. Barber, Albuquerque, N.M., Vlassis, Ruzow & Crowder, George P. Vlassis, Phoenix, Ariz., for plaintiff.

Keleher & McLeod, John M. Kulikowski, Albuquerque, N.M., for defendant.

Larry L. Lamb, Albuquerque, N.M., for third-party defendant.

## MEMORANDUM OPINION

BURCIAGA, District Judge.

This matter having come on for a hearing upon Defendant and Third Party Plaintiff Bank of New Mexico's Motion for Partial Summary Judgment and upon Plaintiff's Motion for Partial Summary Judgment, and the Court having considered the pleadings on file herein, the memoranda of the parties, the Affidavits on file herein, and deposition testimony, and being otherwise advised in the premises, finds that there are no genuine issues as to material facts as to the matters raised by the respective motions of the parties; that Defendant and Third Party Plaintiff's motion is not well taken and should be denied; and that Plaintiff's Motion for Partial Summary Judgment is well taken and should be granted.

The essential facts of this case are not in dispute. The Navajo Tribe (hereinafter referred to as "Tribe") is a sovereign Indian nation. As part of that sovereignty, the Tribe is empowered to create semi-governmental entities called "enterprises", as defined in 5 N.T.C. § 851 (1977). Within its power and authority, the Tribe created the Navajo Housing and Development Enterprise (hereinafter referred to as "NHDE"). See Navajo Tribe Resolution CJA–6–72. All tribal resolutions germaine to NHDE are codified in 5 N.T.C. § 1901, et seq. (1977). § 1904, Control of Operations, specifically provides that:

It is intended that control and operation of this enterprise shall be patterned as closely as is feasible to that of a chartered profit-making corporation of similar magnitude with a Management Board comparable to a Board of Directors of such a corporation. (Emphasis added.)

The Management Board's general powers and duties are set out in § 1905 and will not be fully recited herein. However, this section clearly provides that the Management Board has the full authority and responsibility for NHDE, that it shall function in much the same capacity as a board of directors of a chartered profit-making corporation, and that it must act in the best interests of the Navajo Tribe without incurring contractual or other financial obligations beyond the ability of NHDE to repay those obligations. Nothing in 5 N.T.C. § 1901, et seq. (1977) can in any way be read to stand for the proposition that NHDE can obligate the funds of the Tribe.

In the instant case, NHDE, acting pursuant to its duties under the resolution, incurred indebtedness to Bank of New Mexico (hereinafter referred to as "BNM") by executing two promissory notes. The first note is a real estate mortgage note, dated March 5, 1974, in the amount of $300,000.00. It is a five year note, bearing interest at 9¾% per annum, and requiring monthly payments. There is no indication on the note that the Navajo Tribe in any way guaranteed or agreed to act as a surety on the note. The note was signed by the General Manager of NHDE. The second note was a 90-day note for $32,027.78, bearing interest at 10½% per annum. This note was signed by the acting General Manager of NHDE. Again, as in the first note, there is nothing on the face to indicate that the Tribe was acting as a guarantor or surety on the note.

On or about May 21, 1976, the Tribe purchased certificate of deposit No. 16078 from BNM in the sum of $845,000.00. The funds with which the certificate of deposit was purchased were federal revenue sharing funds which had been allocated to the Plaintiff by the United States Government. For reasons not made clear, the Tribe elected to have BNM hold the certificate of deposit for safekeeping. In acknowledgment thereof, BNM issued a Storage Safekeeping Receipt No. 357 to the Tribe on May 21, 1976. It is undisputed that the name of NHDE does not appear on either the certificate of deposit nor on the safekeeping receipt. The certificate of deposit matured on November 22, 1976, at which time BNM was required by the terms of the certificate to pay $845,000.00, plus 6% accrued interest in the amount of $26,054.17. On or about November 22, 1976, BNM refused to return $283,518.96 of the amount

owed on the matured certificate of deposit. It appears that prior to November 18, 1976, the loans made to NHDE were declared in default by BNM, apparently ,due to NHDE's insolvency. Contending that NHDE and the Navajo Tribe were the same legal entity, BNM set-off the indebtedness of NHDE against the certificate of deposit.

The question presented is whether BNM could properly exercise an equitable right of set-off against federal revenue sharing monies deposited by the Tribe when the debts sought to be set-off were in actuality debts of NHDE.

The Court will first address the issue of whether NHDE and the Navajo Tribe are the same legal entity.

■ BNM argues that the Tribe is without power to form a legitimate corporation. The Court finds otherwise. Sovereign nations, such as the Navajo Tribe, are free to form semi-governmental corporations that act in the best interest of the sovereign. *Keifer and Keifer v. Reconstruction Financial Corporation,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939). While it is true that Indian Tribes exist only at the sufferance of Congress and that their sovereignty is subject to complete defeasance by congressional action, their sovereignty is no less than that of the United States where Congress has not acted. *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). As the Court stated in *Wheeler:*

> The sovereignty that the Indian Tribes retain is of a unique and limited character. It exists only at the sufferance of Congress and is subject to complete defeasance. But until Congress acts, the Tribes retain their existing sovereign powers. In sum, Indian Tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status. 435 U.S. at 323, 98 S.Ct. at 1086. . . .
>
> The powers of Indian Tribes are, in general, "inherent powers of a limited sovereignty which has never been extinguished." 435 U.S. at 322, 98 S.Ct. at

1085, citing F. Cohen, Handbook of Federal Indian Law 122 (1945) (Emphasis in original.)

*Also see Namekagon Development Co., Inc. v. Boise Fort Reservation Housing Authority, et al.,* 395 F.Supp. 23, aff'd., 8th Cir., 517 F.2d 508 (1975).

■ But even if NHDE were not a legal corporation, BNM has maintained a course of dealing with NHDE sufficient to allow estoppel to run against BNM. *See* 8 Fletcher, Cyclopedia of the Law of Private Corporations, § 3889, § 3910 (1966 rev. ed.). On this proposition, the Court commends the well-reasoned opinion of the Supreme Court of Alaska in *Willis v. City of Valdez,* 546 P.2d 570, 574 (Alaska 1976), where the Court stated:

> "Corporation by estoppel" is actually a misnomer for the result of applying the policy whereby private litigants may, by their agreements, admissions, or conduct, place themselves in a position where they will not be permitted to deny the fact of the existence of a corporation. Because estoppel as a doctrine is concerned with the acts of the parties, as opposed to the legality of the corporation itself, we think the better rule is that the corporation by estoppel doctrine may be employed even when the corporation has not achieved *de facto* existence.

In the instant case, BNM at all times pertinent hereto, had two senior vice-presidents serving on the Management Board of NHDE. The deposition of William Wood, one of these officials, reflects his knowledge that NHDE could not obligate the tribal funds of the Navajo Tribe. The Court also finds that these two officials knew, or should have known, of all of the resolutions relevant to NHDE and the limits of NHDE's ability to incur contractual obligations. It is clear from the record that BNM dealt with NHDE as a legally responsible corporation. Accordingly, BNM can not now be heard to argue that NHDE was not a separate legal entity but merely an extension of the Navajo Tribe. *Compare United States National Bank of Galveston v. Madison National Bank,* 355 F.Supp. 165 (1973).

For the foregoing reasons, the Court finds the argument of BNM that the Tribe is without power to form an entity such as NHDE is totally without merit.

The Court will now move to the issue of the propriety of the set-off.

█ The right of a bank to set-off exists only where, with respect to both debt and deposit, the bank and the depositor are in a debtor-creditor relationship and there exists mutuality of demands. 5A Michie, Banks and Banking, § 115c, p. 309. Also, as stated in 10 Am.Jur.2d § 667, at p. 637:

> The right of the bank to apply a deposit to an indebtedness due from the depositor results from the right of setoff which obtains between persons occupying the relationship of debtor and creditor, and between whom there exists mutual demands, and it is familiar law that mutuality is essential to the validity of a setoff, and that in order that one demand may be set off against another, both must mutually exist between the same parties.

Here, it is undisputed that the Navajo Tribe did not incur the debts to BNM. They were incurred by NHDE. Accordingly, no debtor-creditor relationship existed with respect to the Tribe and BNM. As for the mutuality requirement, it simply demands that the party incurring the debt with the bank be the same party that deposited the funds which are the subject of the set-off. It is obvious that the mutuality requirement does not exist in the instant case.

█ It is also worthy of note that a bank's right to apply the deposit of a depositor to his debt is limited once the bank has notice of a third party interest in the funds on deposit. *Liberty Savings Association v. Sun Bank of Jacksonville*, 572 F.2d 591 (7th Cir.1978). When the bank has knowledge that a third party has an interest in the funds deposited in the account in question, the account must be considered special and the bank is prohibited from exercising any claimed right of set-off. *U.S. ex rel. Crow Creek Sioux Tribe v. Tri-County Bank of Chamberlain, S.D.*, 415 F.Supp. 858 (1976).

█ Here, it is clear that the certificate of deposit held in safekeeping by BNM was in the name of the Tribe and not in the name of NHDE. Additionally, BNM had two senior officers serving on the Management Board of NHDE who, as a consequence thereof, were on notice that the Navajo Tribe clearly had an interest in those funds. By virtue of their position, these same officials were aware, or should have been aware, that the funds constituted federal appropriations of revenue sharing funds to the Tribe. Clearly, then, BNM knew, or should have known, of the interest of the Navajo Tribe in the funds, thus preventing the bank from exercising any claimed right of set-off.[1]

---

1. It also is a well-settled rule of law that a person dealing with a government is charged with a duty to inquire as to all facts which may affect that party's transaction with a governmental entity. The U.S. Supreme Court, speaking through Mr. Justice Frankfurter, has stated that:

> Government is not partly public or partly private, depending upon the governmental pedigree of the type of a particular activity or the manner in which the Government conducts it. The Government may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends. *See Keifer and Keifer v. Reconstruction Finance Corporation*, 306 U.S. 381, 390 [59 S.Ct. 516, 518, 83 L.Ed. 784]. Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.

*Also see Blake Construction Co. v. United States*, 296 F.2d 393, 396 (D.C.Cir.1961). The Court finds an analogy between these cases and the instant case. Here, clearly, the Navajo Tribe is a sovereign. And, commensurate with its power as a sovereign, it may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends, such as the NHDE. It being readily apparent to BNM that it was dealing with a sovereign entity, the Court is of the opinion that BNM had the duty to inquire

Based on the foregoing, the Court finds that Plaintiff's Motion for Partial Summary Judgment is well taken and should be granted, leaving for trial all issues of damages including punitive damages.

A judgment consistent with this Memorandum Opinion will be filed herein.

into the relationship between the Tribe and NHDE; that once it acted, without inquiry, upon its belief that the Tribe and NHDE were the same entity, it did so at its own peril.