636 P.2d 304

**PRODUCERS GRAIN CORPORATION, Plaintiff-Appellee,**

v.

**Robert L. WILSON, Defendant-Appellant.**

**No. 5014.**

Court of Appeals of New Mexico.

Oct. 15, 1981.

Certiorari Denied Nov. 19, 1981.

David W. King, Threet & King, Albuquerque, for appellant.

Charles J. Crider, Matthews & Crider, P. C., Albuquerque, for appellee.

## OPINION

WALTERS, Judge.

Judgment was awarded below to Producers Grain Corporation on its suit against Wilson for an outstanding indebtedness of $60,714.12. The corporation alleged fraud, misrepresentation, knowing issuance of insufficient fund checks, and Wilson's purporting to act for a corporation that did not exist. Wilson attacks the trial court's findings in favor of appellant on those issues, as well as the court's award of interest at the rate of 10% on a part of the judgment. We affirm the court's decision of liability, but reverse on the matter of interest.

The following findings are those challenged by Wilson:

2. Robert L. Wilson, hereafter "Wilson", falsely represented to Producers Grain Corporation, hereafter "PGC", through its agents in September of 1977 and in the following months that Allen Feed and Milling Co., Inc., hereafter "Allen Feed", had had financial difficulties and had gone out of business or bankrupt and that Southwestern Feed and Milling Co., Inc., hereafter "Southwestern Feed", was a new business and a new corporation of which Wilson was President.

3. Wilson filled out and signed a credit inquiry, Plaintiff's Exhibit 39, dated September 21, 1977, in which Wilson falsely represented in writing that he was applying for credit with PGC for a corporation named Southwestern Feed and Milling Co., Inc., and that he was President of a corporation named Southwestern Feed and Milling Co., Inc.

4. Wilson falsely represented to PGC, through its agents, in September and Oc-

tober 1977, that Southwestern Feed was solvent and the business was doing well.

\* \* \* \* \* \*

7. Allen Feed and Milling Co., Inc., had not gone bankrupt and out of business in 1977 as represented by Wilson.

\* \* \* \* \* \*

11. By September or October 1977, the condition of the business was even worse for it had been learned by Wilson that assets carried on the Financial Statement at over $81,000.00 primarily consisting of notes payable were worthless. So, in fact, by September or October 1977, Wilson knew or should have known, that the liabilities of the business exceeded its assets by approximately $180,000.00.

\* \* \* \* \* \*

13. Wilson did not disclose to PGC or its agents that Allen Feed and Southwestern Feed were one and the same entity. Wilson intentionally led PGC and its agents to believe that Southwestern Feed was a totally separate entity and business from Allen Feed. This was false and misleading.

14. Wilson, knew, or should have known, of the very serious financial difficulties of Allen Feed as outlined above, and he did not disclose any of this information to PGC or its agents. On the contrary, Wilson did everything to lead PGC and its agents to believe that Southwestern Feed was a totally new and separate enterprise and that it was prospering, increasing sales substantially, and doing well.

15. Wilson never disclosed to PGC or its agents that Southwestern Feed and Allen Feed were one and the same entity; that Allen Feed had very serious financial problems and was, in fact, insolvent; that Southwestern Feed was not a separate and new business, but was subject to all of the liabilities and financial problems of Allen Feed; that there had been no change in ownership or corporations; that he had simply attempted to change the name of the business without complying with the state statutes to accomplish the name change.

\* \* \* \* \* \*

17. Wilson's representations that the name of the corporation of which he was President was Southwestern Feed and Milling Co., Inc., was false; that Southwestern Feed was a new business, separate and apart from Allen Feed, was false; that Southwestern Feed was a corporation and that he was President of it was false; and additionally, the implied representations of ability to pay, and solvency arising from the application for credit were false.

18. The aforesaid misrepresentations are misrepresentations of material fact, known to be untrue by Wilson at the time he made them, and made with an intent to deceive and to induce PGC to act upon it by extending credit to Southwestern Feed, or in the alternative, recklessly made without knowledge of their truth as a positive assertion.

19. Wilson knew or should have known, that PGC and its agents were acting under the mistaken belief that they were dealing with a corporation by the name of Southwestern Feed and Milling Co., Inc., of which he was President and that it was a new business, totally separate and distinct from Allen Feed and Milling Co., Inc., and not subject to the financial problems and troubles of Allen Feed and Milling Co., Inc.

20. Wilson undertook to supply information to PGC and its agents for their guidance and PGC's transactions with Southwestern Feed and Milling Co., Inc., and failed to exercise reasonable care or competence in obtaining or communicating the information.

21. Wilson made the false representations and failed to disclose the truth with the knowledge and intent that PGC would rely upon said information in deciding whether to extend credit to Southwestern Feed.

22. PGC relied upon the false representations of Wilson and extended credit on open account of Southwestern Feed for the purchase of grains and feeds between the period of October 1977 and May 1978.

\* \* \* \* \* \*

27. Wilson made four payments on the account by checks dated March 21, 1978, in the amount of $3,684.00, March 28, 1978, in the amount of $1,624.00, in April 6, 1978, in the amount of $1,624.00, in April 17, 1978, in the amount of $1,935.40. All four of these checks were returned marked insufficient funds or not paid.

28. These insufficient fund checks were issued by Wilson on Southwestern Feed's checking account on dates and time when Wilson knew, or should have known, that there were insufficient funds in the account to cover the checks.

29. In applying for credit with PGC on September 21, 1977, Wilson assumed to act as a corporation, Southwestern Feed and Milling Co., Inc., when, in fact, no such corporation then existed in the State of New Mexico, under the New Mexico Business Corporation Act.

30. PGC and its agents justifiably relied upon the false representations of Wilson in extending credit to Southwestern Feed.

Defendant did not challenge additional findings of constructive fraud, negligent misrepresentation, and assumption to act as a corporation without authority to do so in violation of § 53–18–9, N.M.S.A. 1978.

■ Wilson's assertions that the findings of fraud and misrepresentations cannot be sustained because they are not supported by clear and convincing proof, see Visic v. Paddock, 72 N.M. 207, 382 P.2d 694 (1963), do not persuade us. The evidence and all reasonable inferences therefrom are to be construed most favorably in support of the findings entered. State v. Bidegain, 88 N.M. 466, 541 P.2d 971 (1975). There was substantial evidence to permit the trial court to find as it did. See Delgado v. Costello, 91 N.M. 732, 580 P.2d 500 (Ct.App. 1978); Krupiak v. Payton, 90 N.M. 252, 561 P.2d 1345 (1977); and Sauter v. St. Michael's College, 70 N.M. 380, 374 P.2d 134 (1962), which discuss factual circumstances similar to the instant matter, and support our determination that there existed in this case sufficient and substantial evidence to sustain plaintiff's claim of intentional fraudulent misrepresentations, with justifiable reliance by plaintiff upon those representations, to its detriment. See Krupiak and Sauter, supra; Gaston v. Hartzell, 89 N.M. 217, 549 P.2d 632 (Ct.App.1976); Neff v. Bud Lewis Co., 89 N.M. 145, 548 P.2d 107 (Ct.App.1976); Amoco Pipeline Co. v. Admiral Crude Oil Corp., 490 F.2d 114 (10th Cir. 1974); Prosser, Law of Torts, § 108, at 717–18 (4th Ed.). Moreover, the judgment is sustainable as well on the other theories pleaded, adjudged, and not challenged.

■ If there was error in the trial court's Finding 27 regarding some of the checks tendered as partial payment on the account, the defendant was not harmed thereby. Finding 23 established the credit extended on open account and unpaid at $57,208.12, although Plaintiff's Exhibit 60 would have supported a finding of a larger unpaid account of $57,684.66. Appellant has not attacked Finding 23. Finding 24, also not challenged, and Plaintiff's Exhibit 41, clarify the amount of defendant's total debt by adding back to the ledger account the amount of defendant's two checks that were returned to plaintiff after deposit, marked "Insufficient Funds" and "Do not present again as cash," which two checks totalled $3,504.50. The amount found as credit extended (which reflected the reduction of total credit by the total of all of the checks tendered by defendant), plus the total of the two checks which did not clear, equals $60,712.62. That is the amount for which the court concluded defendant was personally liable to plaintiff.

Defendant's argument on this issue goes primarily to the amounts on deposit to defendant's bank account at the time the checks were issued. Three of five checks given to plaintiff apparently cleared; thus, the court's Finding 27 is inaccurate as it concerns the checks for $1935.40, $3684.00 and $1624.00. Two other tendered checks for $1868.50 and $1636.00 were not paid, however, and the total of those unpaid checks is the amount the court added to $57,208.12 (Finding 23) to reach the total liability of $60,712.62. Thus, the error in Finding 27 did not prejudice defendant.

All error is not reversible. *Levine v. Gallup Sand and Gravel Co.*, 82 N.M. 703, 487 P.2d 131 (1971).

The trial court awarded interest of 10% on the judgment of $60,712.62 from October 21, 1978 to September 16, 1980, and 10% on the judgment and costs until paid.

Prior to judgment, but after this suit was filed, the interest rate allowable on judgments and open accounts was increased from 6% to 10%. Section 56–8–3, N.M.S.A. 1978 (1980 Supp.). In *Hillelson v. Republic Ins. Co.*, 627 P.2d 878 (S.Ct.1981), it was held that the interest statute in effect at the time of filing suit applied. The judgment, as it pertains to interest, is reversed; the trial court is directed to assess interest at the rate of 6%. All other matters are affirmed.

It is so ordered.

HENDLEY and DONNELLY, JJ., concur.