The NAVAJO TRIBE, Plaintiff-Appellee,

v.

The BANK OF NEW MEXICO, a New Mexico corporation, Defendant-Appellant.

No. 80–2278.

United States Court of Appeals, Tenth Circuit.

Feb. 16, 1983.

Paul D. Barber of Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, N.M., for plaintiff-appellee.

Robert H. Clark, Albuquerque, N.M. (with John M. Kulikowski and Donald W. Codding, Albuquerque, N.M., on brief), all of Keleher & McLeod, P.A., Albuquerque, N.M., for defendant-appellant.

Before DOYLE and LOGAN, Circuit Judges, and BOHANON,* District Judge.

BOHANON, District Judge.

## FACTS

Early in 1972 the Navajo Tribe (hereinafter referred to as Tribe) established the *Navajo Housing and Development Enterprise* (hereinafter referred to as NHDE) in conformity with tribal law. In March, 1974, the Bank of New Mexico loaned $300,000.00 to NHDE. Again in December, 1975, the bank loaned NHDE $32,027.78. However, by November 18, 1976, NHDE was in default to the bank on the notes in the amount of $283,518.96. After repeated demands for payment, the bank sought other funds with which to satisfy the debt. A review of bank holdings revealed a six-month certificate of deposit with a maturity date of November 22, 1976, belonging to the Navajo Tribe. This certificate of deposit was in the amount of $845,000.00. The bank immediately deducted the amount of

* Of the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

the defaulted loan of NHDE from the certificate of deposit funds and returned the remainder of the monies to the Tribe. This action ensued.

The district court determined that the bank improperly withheld the funds of the Tribe in satisfaction of the debt of NHDE. It also awarded prejudgment interest on the amount withheld by the bank.

The Bank of New Mexico presents three issues on appeal. First, the bank argues that the Tribe and the NHDE are not legally separate entities. Second, the bank argues that it has the legal right to setoff the NHDE debt against the tribal funds despite the special nature of the monies deposited.[1] And third, the bank argues that the trial court erred in its application of the law of New Mexico regarding prejudgment interest.

### 1. Legally Separate

The critical issue on appeal is the question of whether the NHDE was essentially the same legal entity as the Tribe. The appellant-bank argues that the Tribe did not have the capacity to create a semi-governmental entity. Alternatively, the bank argues that even if the Tribe did have power to create such an entity, the operation of the NHDE was such as to estop the Tribe from asserting the separateness of the enterprise.

Similar arguments were presented to the trial court and were found unpersuasive. In its order of February 28, 1980, the district court determined that the Tribe had the power to, and in fact did, create a separate semi-governmental entity. In addition, the lower court determined that due to the historical dealings with the NHDE and the fact that two senior vice-presidents of the Bank of New Mexico served as members of the Management Board of the NHDE throughout its relevant lifetime, the bank, rather than the Tribe, was estopped from denying the separateness of the tribal enterprise. We concur with the district court's conclusions on the issue of separateness of the tribal enterprise and commend the excellent analysis of Judge Burciaga. *The Navajo Tribe v. The Bank of New Mexico*, 556 F.Supp. 1 (D.N.M.1980).

The district court's legal conclusion that the tribal enterprise exists apart from the Tribe while maintaining close relationships, indeed common interests, is totally consistent with precedent. *See United States v. Mississippi Tax Comm'n*, 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975); *Groves v. United States*, 533 F.2d 1376 (5th Cir.1976). Indeed, this is the very purpose of semi-governmental entities. *Keifer and Keifer v. Reconstruction Financial Corp.*, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939).

■ On the other hand, the appellant argues that it is not uncommon to treat a semi-governmental entity or instrumentality as coextensive with the government. *White Mountain Apache Indian Tribe v. Shelley*, 107 Ariz. 4, 480 P.2d 654 (Ariz. 1971); *see also Smith v. Witherow*, 102 F.2d 638 (3rd Cir.1939); *First Nat. Bank of Homestead v. Dickinson*, 291 F.Supp. 855 (N.D.Fla.1968). However, this argument reflects a misunderstanding of the law applied to semi-governmental entities. The test used in determining whether to consider the enterprise as separate or coextensive focuses not on the indices of control but instead, focuses on the legal issue presented and measures its detrimental impact upon the attributes of sovereignty belonging to the government.

We recently applied this test to a Navajo enterprise in the case entitled *Donovan v. Navajo Forest Products Industries*, 692 F.2d 709 (10th Cir.1982). In *Donovan* we perceived a direct threat to the powers inherently granted the Indian Tribe. In that case it was determined that the application of the Occupational Safety and Health Act (OSHA) standards to tribal enterprises would tend to abrogate certain sovereign

---

1. An issue at trial not important here due to the disposition of this action was the nature of the funds deposited by the Navajo Tribe. The funds were originally federal revenue sharing Funds with specific guidelines attached to their use.

rights reserved to the Navajo Tribe by treaty.

Similarly, in *White Mountain, supra,* the Arizona Supreme Court determined that the right to sue a tribal enterprise was exclusively within the inherent power of the Tribe to establish. Therefore, unless the Tribe specifically expressed the intent that an enterprise could be subjected to court action, the determination that an enterprise could be sued would be an unreasonable interference with tribal sovereignty.

Where sovereignty is not an issue, courts have consistently held that tribal enterprises are separate entities and, therefore, independent of the Tribe. *Navajo Tribal Utility Authority v. Arizona Department of Revenue,* 608 F.2d 1228 (9th Cir.1979) (separate entities for federal jurisdictional purposes). *R.C. Hedreen Co. v. Crow Tribal Housing Authority,* 521 F.Supp. 599 (D.Mont.1981); *Namekagon Development Co., Inc. v. Bois Forte Reservation Housing Authority,* 395 F.Supp. 23 (D.Minn.1974) (separate entities for diversity of citizenship purposes).

 Therefore, in order to treat the Tribe and the NHDE as non-separable, as the defendant bank proposes, a threat to an existing attribute of the Tribe's sovereignty must be demonstrated. In all other cases, the distinct separateness of the enterprise is clearly recognized with the characteristics of that enterprise determined by tribal law.

In this case, the Bank of New Mexico does not argue that to recognize the separateness of the NHDE would detrimentally impact upon some attribute of sovereignty of the Navajo Tribe. Indeed, to treat the two as coextensive, as the bank suggests, would challenge the historically recognized power of a sovereign to form a governmental corporation. *See Keifer and Keifer v. Reconstruction Finance Corp., supra.* Thus, to treat the Navajo Tribe and its enterprises as a single entity under these facts would frustrate sovereignty in contravention of precedent.

 Therefore, the district court correctly determined that the legal position of the NHDE was separable from the position of the Tribe, and the characteristics of the enterprise should be determined by tribal law. The characteristics of the enterprise are codified in 5 N.T.C. § 1901, et seq. (1977) and provide that the enterprise is powerless to incur financial obligations beyond the ability of the NHDE's ability to repay. Nowhere in the code does the Tribe express the intent to incur the liabilities of the NHDE in the event of financial misfortune.

 The appellant argues that the trial court improperly granted summary judgment on the issue of separateness of the two entities due to the factual behavior of the Tribe in dealing with the bank. In other words, the bank argues that even if a separate legal entity was created by the Tribe, it became but an alter ego of the Tribe in practice. The standard to be applied in the granting of a summary judgment is the existence of no genuine issue of material fact. It is the duty of the court to grant the party opposing such a motion the benefit of all reasonable doubt in determining whether a genuine issue exists. In this case the appellant argues that evidence of tribal behavior was ignored. However, examination of the record reveals no affirmative act by the Tribe that should create the impression that it would be responsible for the activities of the NHDE. While it is true that substantial evidence is present of the close connection between the Tribe and its enterprise, no instance of behavior inconsistent with the operation of an instrumentality of the tribal government is shown. As the trial court noted, the evidence is replete with facts that show the bank had actual knowledge of the separateness of the entities and the proper methods to pursue to obtain financial guarantees from the Tribe for the debts of the NHDE.[2] The

---

**2.** Both of the senior vice presidents of the bank who served on the management board of NHDE admitted that NHDE could not obligate tribal funds. In his deposition on November 2, 1978, William F. Wood, Jr., answered the Tribe's questions as follows:

mere pleading of inconsistent acts performed by the Tribe tending to show identity of the two entities is not enough to defeat a motion for summary judgment. It is the duty of the court in reviewing such a motion to inquire whether such proof can be made, whether such evidence exists. We are convinced that the evidence was not before the lower court and his judgment on the proof available was without error.

Therefore, upon consideration of the record and appellant's argument, we conclude that the trial court correctly determined that the Tribe and the NHDE were separate entities with respect to the issue of debt liability.

### 2. Right of Setoff

■ It is axiomatic that the right to setoff exists only where the bank and the depositor are in a debtor-creditor relationship. Given the finding above that the debts of the NHDE are independent of the debts of the Tribe, there did not exist a debtor-creditor relationship between the Tribe and the bank.[3]

### 3. Prejudgment Interest

Following the issuance of partial summary judgment by the district court on the issues of tribal enterprise independence and the nonexistence of a right of setoff against the Navajo Tribe, the district court continued to receive argument on the issue of prejudgment interest. The defendant bank argued that under New Mexico law the awarding of prejudgment interest is a factual question and should, therefore, proceed to a jury. *O'Meara v. Commercial Insurance Company*, 71 N.M. 145, 376 P.2d 486 (1962). Additionally, the Bank argued that the amount of the interest, should it be awarded, would be controlled by the interest appearing on the wrongfully setoff certificate of deposit (6%). The later argument was based on the language of § 56–8–4 NMSA 1978 (1980 Supp.) which provides:

"Judgments and Decrees for the payment of money shall draw the same rate of interest as the contract on which they are rendered, and such rate, if other than ten percent, shall be expressed in the Judgment or Decree...."

In its order of October 17, 1980, the trial court rejected these arguments and awarded prejudgment interest in the amount of ten percent (10%) as a matter of judicial discretion.

■ The trial court reasoned that the New Mexico case law stating that prejudgment interest was a matter for the trier of fact was inconsistent with the bulk of previous law and was *de facto* overruled in

"Q Was it your understanding that the board, anytime it wanted to, could get more money from the Navajo Tribe?
A No.
Q Could the board, by resolution, appropriate money from the Navajo Tribe's general fund?
A By resolution of the NHDE board? No.
Q By resolution of the NHDE board, could the board obligate the Navajo Tribal general funds?
A In some respects, yes. The board could, for example, go start a new building project which the Tribal general funds would be obligated to pay any bonding problems on.
Q You mean if the Navajo Tribal Council guarantees the bonds?
A Yes, which they had done in a blanket fashion so that the board of NHDE could then say to Townsend, 'Okay, start an office building over there,' which would be automatically bonded by "X" bonding company the bonds which were guaranteed by the Tribal Council. In that sense, yes. In no other sense that I know of.
Q In the absence of such an authorization for bonding, NHDE could not obligate Tribal funds; is that correct?
A I believe that's right."

The Navajo Tribal bond guarantees referred to by Mr. Wood were made by appropriate resolutions of the Navajo Tribal Council. Council resolution CMY–57–74 and Advisory Committee resolution ACMA–84–75 both authorized the indemnification of bonding companies in the event of default by NHDE on its construction projects. A similar Council resolution expressly authorized the guaranteeing of a loan from Standard Life and Accident Insurance Company to NHDE.

3. This being the situation, no right of setoff existed as to the certificate of deposit. Therefore, we need not decide whether a right of setoff existed in the bank against the revenue sharing funds of the Navajo Tribe.

recent legal opinions by the Supreme Court of New Mexico. *Allsop Lumber Co. v. Continental Casualty Co.,* 73 N.M. 64, 385 P.2d 625 (1963); *Montgomery v. Cook,* 76 N.M. 199, 413 P.2d 477 (1966); *Varney v. Taylor,* 81 N.M. 87, 463 P.2d 511 (1970); *Kennedy v. Lynch,* 85 N.M. 479, 513 P.2d 1261 (1973); *Keeth Gas Co., Inc. v. Jackson Creek Cattle Co.,* 91 N.M. 87, 570 P.2d 918 (1977); *Kennedy v. Moutray,* 91 N.M. 205, 572 P.2d 933 (1977); *Trujillo v. Beaty Electric Co., Inc.,* 91 N.M. 533, 577 P.2d 431 (1978); *Farmington National Bank v. Basin Plastics,* 94 N.M. 668, 615 P.2d 985 (1980). This court is also convinced upon review of New Mexico case law, that were the New Mexico Supreme Court to pass on this issue it would hold that the award of prejudgment interest is a question of law solely within the sound discretion of the court. Indeed, we have implied as much in previous opinions. *See Burrow v. Danbold,* 422 F.2d 133 (10th Cir.1970); *Butler v. Scott,* 417 F.2d 471 (10th Cir.1969).

The trial court found unpersuasive the defendant's argument that the terms of the certificate of deposit controlled the allowable amount of prejudgment interest. Instead, the trial court applied the statutory rate designated for situations where no contract was in force at the time of the suit. Section 56–8–3, NMSA 1978 (1980 Supp.) The district court reasoned:

"A plain reading of the certificate of deposit shows that it was for a sum certain ($845,000.00), a fixed period of time (6 months), a fixed rate (6%), and non-renewable. The non-renewable provision can only be read to mean that six (6) months at 6% were the sole terms of the contract. It is indeed a strained position, and one the Court cannot accept, for BNM [Bank of New Mexico] to argue that a contract interest rate which is only designed to last six months survives years of litigation initiated by its own wrongful set-off. No citation of authority is required for the proposition that BNM's wrongful set-off, as determined by this Court, cannot in any way be called an agreement between BNM and the Tribe that the six (6) percent interest rate should remain in effect.

There being no contract in force, the appropriate interest rate is determined by § 56–8–3, NMSA 1978 (1980 Supp.) Section 56–8–3 reads in pertinent part:

The rate of interest, in the absence of a written contract fixing a different rate shall be ten percent annually in the following cases

A. on money due by contract ...

Thus, BNM shall pay the Tribe ten (10) percent annual interest on the amount unlawfully set off from the date of maturity of the certificate of deposit up to and including February 28, 1980, the day this Court entered summary judgment."

This court was, therefore, presented with the task of interpreting the intent and application of New Mexico statutes §§ 56–8–3 and 56–8–4. However, due to recent state supreme court interpretive decisions regarding § 56–8–3, this issue need not be determined for purposes of this controversy.

On March 3, 1980, § 56–8–3 was amended to provide for interest in the amount of 10 percent on judgments and decrees for the payment of money. Previously, the statute provided for interest in the amount of 6 percent per annum. In *Hillelson v. Republic Ins. Co.,* 96 N.M. 36, 627 P.2d 878 (1981), the state supreme court was presented with a procedural question regarding the date of application of the amendment and the attendant increased interest rate. Upon consideration of the New Mexico state constitutional restrictions, the court determined that the amendment would apply only to cases filed after the date of enactment. *See also Producers Grain Corp. v. Wilson,* 97 N.M. 33, 636 P.2d 304 (Ct.App.1981).

■ The instant case was filed on December 7, 1977, over three years prior to the enactment of the amendment to § 56–8–3. Therefore, if § 56–8–3 is properly applied to the facts of this case, the amount of interest that may be awarded is 6 percent per annum. Similarly, if § 56–8–4 is applicable to the present action, as the appellant contends, the proper rate to apply is 6 percent per annum. Therefore, the amount to

apply to the heretofore recognized judgment is in the amount of 6 percent per annum under either theory.

Accordingly, there is no need for this court to interpret the New Mexico statutes to determine the correct provision to apply under the incident facts. The trial court, without the benefit of interpretive case law, erred by applying the common procedural rule of law related to the effective date of a statute. As state law is now clear, the maximum allowable interest under either applicable statute is 6 percent per annum. We accordingly remand the action to allow the trial court to modify its earlier order to reflect the lower rate of interest. In all other respects we affirm the judgment of the district court as to the determination of prejudgment interest.

In summary, we affirm the district court's finding of separateness of the Navajo Housing Development Authority from the Navajo Tribe and his attendant holding of the unlawfulness of the setoff as exercised by the Bank of New Mexico. Finally, on the issue of prejudgment interest, we concur in the district court's determination that the awarding of such relief is a matter of law and proper within the sound discretion of the trial court. However, we hereby remand the case to the district court to allow the judgment to reflect the 6 percent per annum amount as determined by the relevant statutes as of the time of the filing of this action.

AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.