In re NORTHWEST LIQUOR INDUSTRIES, INC., a/k/a Lakeland Liquor Co., Inc. a/k/a Eau Claire Liquor Co., Inc. a/k/a Northwest Liquor Co., Inc. a/k/a Northern Brewing Company, Bankrupt.

Don E. WHINNERY, Trustee, Plaintiff,

v.

The CITIZENS NATIONAL BANK OF STEVENS POINT, Defendant.

Bankruptcy No. 76–1422.

United States Bankruptcy Court, W.D. Wisconsin.

Sept. 26, 1988.

Michael L. Meyer, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for plaintiff.

Wayne G. Faris and Teresa J. Rasmussen, Oppenheimer, Wolff & Donnelly, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

THOMAS S. UTSCHIG, Bankruptcy Judge.

### PROCEDURAL POSTURE

The plaintiff trustee, by Michael L. Meyer of Robins, Zelle, Larson & Kaplan, has brought a motion for partial summary judgment pursuant to Bankruptcy Rule 756[1] to recover the $125,000 setoff by the defendant Citizens National Bank of Stevens Point against the indebtedness of the bankrupt, Northwest Liquor Industries, Inc. The defendant appears by Wayne G. Faris and Teresa J. Rasmussen of Oppenheimer, Wolff & Donnelly, and objects to the motion. A party is entitled to summary judgment when there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). By agreement of the parties, the issues have been submitted to the Court for determination through briefs. For the reasons set forth below, the plaintiff's motion for partial summary judgment is denied.

### FACTS

The parties have stipulated to the facts which the Court summarizes as follows. On November 6, 1976, Northwest Liquor Industries, Inc., (the "bankrupt") purchased a cashier's check from the defendant, Citizens National Bank of Stevens Point (the "Bank") in the sum of $125,000. The check was payable to Grand Cayman Brokerage, Ltd. ("Grand Cayman") and was for the purpose of paying an obligation of the bankrupt to Grand Cayman. The cashier's check was purchased with funds taken from the bankrupt's depository account with the Bank. That account was maintained by the bankrupt until and after its petition for relief under Chapter XI of the Bankruptcy Act was filed with this Court. As a result of the purchase of the cashier's check, the Bank had a direct obligation to pay the check to its holder when presented. The $125,000 was commingled with the Bank's funds and could be used in its operations.

The bankrupt filed its petition under Chapter XI of the Bankruptcy Act on November 26, 1976. On that date, the bankrupt was indebted to the Bank in the sum of $52,273.62 plus accrued interest as set forth in the proof of claim filed by the Bank in this case. After the filing of the bankruptcy petition, Grand Cayman presented the cashier's check for payment, and the Bank dishonored the check. Grand Cayman therefore brought an action in this Court against the Bank and the trustee seeking to compel payment of the check. By stipulation and order for dismissal with prejudice dated December 2, 1977, Grand Cayman's rights in the cashier's check were extinguished. After the entry of that order, the Bank set off the $125,000 against the obligation of the bankrupt to the Bank.

### DISCUSSION

Banks have a statutory right of setoff under the Bankruptcy Act, 11 U.S.C. § 108 (1976). § 68 of the Act provides:

1. The former Bankruptcy Act [11 U.S.C. § 1 *et seq.* (1976)] is applicable to this case.

*Set–Offs and Counterclaims.* a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision g of section 57 of this Act; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy.

11 U.S.C. § 108 (1976). "To be mutual, the debts or credits must be in the same right and between the same parties, standing in the same capacity." 4 *Collier on Bankruptcy,* ¶ 68.04 at 867 (14th ed. 1978).

■ A bank's right of setoff extends only to accounts existing at the time of the bankruptcy filing. *In re Williams,* 422 F.Supp. 342 (D.Ga.1976). As stated in 4 *Collier on Bankruptcy:*

> In keeping with the general theory permeating the Bankruptcy Act, the filing of a petition represents the time of cleavage after which sums deposited with the Bank may not be set off against the bankrupt's indebtedness to the Bank. The Bank may have a right of setoff as to the existing deposit balance when a petition is filed but such right does not extend to subsequent deposits and they are recoverable by the trustee or receiver.

4 *Collier on Bankruptcy,* ¶ 68.16[3] at 929 (14th ed. 1978).

The trustee argues that the absence of mutuality of obligations precludes the Bank's exercise of a setoff under § 68 of the Bankruptcy Act. The trustee reasons that mutuality does not exist because: (I) the $125,000 set aside to honor the cashier's check constitutes a special deposit, (II) the Bank's obligation to a third party de-stroys the mutuality of obligations required for a valid setoff, or (III) the Bank's knowledge of the third party's interest in the $125,000 destroys the right of setoff. None of the above arguments convince the Court that summary judgment should be granted.

## I. SPECIAL DEPOSIT

■ The trustee's argument that the $125,000 set aside to honor the cashier's check constitutes a special deposit is based upon three theories: 1) a waiver theory, 2) a non-withdrawable funds theory, and 3) a trust theory. The trustee has the burden of proof to rebut the presumption that funds deposited in the ordinary course of business constitute a general deposit and to establish the fact that the deposit constitutes a special account. *Coyle v. Pan American Bank of Miami,* 377 So.2d 213 (Fla.Dist.Ct.App.1979).

### 1. Waiver Theory

The trustee initially argues that the cashier's check issued by the Bank represents an explicit or implicit agreement by the Bank not to exercise its right of setoff. This waiver agreement either creates or evidences a special account. Although some courts have advanced the idea that by accepting a special deposit a bank implicitly agrees to waive its right of setoff, *Engleman v. Bank of America Nat. Trust & Sav. Ass'n,* 98 Cal.App.2d 327, 219 P.2d 868 (1950), this Court cannot accept the converse of such a notion as argued by the trustee. A waiver of setoff may be implied from the creation of a special account because the Bank as trustee of a special account may breach its fiduciary duty by exercising its right of setoff on such an account. However, a bank does not take on the responsibility of a trustee by waiving its right of setoff; the bank merely pledges inaction. The trustee's reliance on *In re Applied Logic Corp.,* 576 F.2d 952 (2d Cir.1978) is misplaced. *In re Applied Logic Corp.* spoke not to the creation of a "special deposit" but to the waiver of a bank's right of setoff. Accordingly, the Court is not persuaded that an agreement

to waive setoff creates or evidences a special account.

■ Even if this Court accepted the idea that an agreement to waive setoff creates or evidences a special account, the Court rejects the trustee's argument that a cashier's check constitutes an agreement by the Bank to waive its right of setoff. While it is true that a bank can waive its right of setoff expressly or impliedly, the courts have been slow to find an express waiver of the right absent clear and unambiguous language. For instance, in *Hansman v. Imlay City State Bank*, 121 Mich.App. 424, 328 N.W.2d 653 (1982), the depositor executed several notes to the bank. The notes were secured by personal property. The security agreement provided: "Except as set forth above, this loan is secured, the bank hereby expressly waiving all other security therefore." The court rejected the depositor's argument that this language waived the bank's right of setoff. In the present case, no agreement exists between the parties except the contract created by law between the bankrupt as remitter and the Bank as acceptor upon issuance of the cashier's check.

While the rights and duties of a remitter are not expressly provided for under the Uniform Commercial Code, U.C.C. § 3–413(1) defines the rights and duties of a bank. The Court finds no language in the Uniform Commercial Code which waives a bank's right of setoff upon issuance of a cashier's check. Nor does the Court believe that the nature of this transaction, the buying and selling of the Bank's credit, implicitly waives a bank's right of setoff. Accordingly, the Court is not convinced that a cashier's check constitutes an agreement by the Bank to waive its right of setoff.

### 2. Non–Withdrawable Funds Theory

The trustee's second theory contends that the issuance of a cashier's check constitutes a special deposit because the bankrupt as remitter could not withdraw the committed funds. For support, the trustee cites *Katz v. First Nat. Bank of Glen Head*, 568 F.2d 964 (2d Cir.1977) *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1250, 55 L.Ed.2d 771 (1978); and *In re Amco Products, Inc.*, 50 B.R. 723 (W.D.Mo.1983). In *Katz*, the question before the court was whether the funds in a bank account were a transfer to the bank, and therefore could be set aside as a preference, pursuant to § 60, and subject to setoff. In *Amco Products*, the issue before the court was whether the trustee was entitled to funds in a "differential" account. The Court disagrees with the trustee as to the usefulness of these cases in the present case.

As owner of the instrument the remitter may choose not to transmit it to the payee and, under general banking practice, he will be able to recover from the obligor. *See* Britton, *Bills and Notes* 300–01 (1943). In the present case, the Bank's operating procedures did not differ from general banking practices as to the return of cashier's checks. Accordingly, while the depositor's access to the funds may be a factor in distinguishing between a general and special account, the Court is not persuaded that it is determinative in this case.

### 3. Trust Theory

■ The trustee's third theory argues that the Bank becomes a trustee in a fiduciary capacity upon issuance of a cashier's check. The resulting trust relationship creates a special account. The trustee cites *In re Goodson Steel Corp.*, 488 F.2d 776 (5th Cir.1974) for support. In *In re Goodson Steel Corp.*, the court decided that a payroll account did not constitute a special account because there was no agreement that the account was to be kept isolated from the other checking accounts in the bank. While it is true that a case of "mutual credits" does not arise within the meaning of § 68a of the Bankruptcy Act when the bank's possession of funds is that of a trustee in a fiduciary capacity, it is not necessarily true that the bank becomes a trustee when it issues a cashier's check. In dealing with this question, the courts have considered various theories, *see* Comment, *Transmission of Money and Sale of Credit*, 33 Yale L.J. 177 (1923), but they have generally rejected the theory that a trust relationship is established. *Montana–Wyoming Ass'n. of Credit Men v.*

*Commercial National Bank*, 80 Mont. 174, 259 P. 1060 (1947). Under the most widely adopted theory, the transaction is seen as a completed sale of the bank's credit to the remitter by which the money paid to the bank becomes the bank's property. *Legniti v. Mechanics & Metals National Bank*, 230 N.Y. 415, 130 N.E. 597, 16 A.L.R. 185 (1921). *Harrison v. Wright*, 100 Ind. 515, 58 Am.Rep. 805 (1884). *Grammel v. Carmer*, 55 Mich. 201, 21 N.W. 418, 54 Am.Rep. 363 (1884). Accordingly, the Court is not satisfied that the issuance of a cashier's check establishes a trust relationship.

None of the theories advanced by the trustee persuade this Court that the purchase of a cashier's check creates a special account. Money collected by a bank upon the sale of a cashier's check (which remains uncashed) does not constitute a special deposit but a general deposit. *Union Electric Light & P. Co. v. Cherokee Nat. Bank*, 94 F.2d 517 (8th Cir.1938); Sites, Robert E. *Banks and Banking–Trusts–Special Deposits–Agreement Between Depositor and Bank*, 37 Mich.L.Rev. 470 (1939). Accordingly, the Court cannot grant summary judgment on the basis of the trustee's first argument.

## II. OBLIGATION TO A THIRD PARTY

Secondly, the trustee argues that the obligation of the Bank to a third party destroys the mutuality of obligations. The trustee asserts that "the Bank's unconditional obligation on the cashier's check on the day of filing was to Grand Cayman Brokerage—not Northwest."[2] Trustee's Memorandum in Support of Motion for Partial Summary Judgment at 11, *In re Northwest Liquor Industries, Inc.*, No. 76–1422 (Bankr.W.D.Wis. filed Nov. 26, 1976). This Court cannot agree with the trustee's conclusion absent the facts necessary to determine Grand Cayman's interest in the funds at the time of the filing.

As long as the bankrupt as remitter can recover the funds, the Bank's obli-

gation runs to the bankrupt as remitter. As long as the Bank's obligation runs to the bankrupt as remitter, mutuality of obligations does exist. To show that the remitter is entitled to recover the funds used to purchase the cashier's check, one must show that the cashier's check has not been and cannot be, negotiated by the valid endorsement of the named payee. *Parker v. Dudley*, 527 So.2d 240 (Fla.Dist.Ct.App. 1988). To show that the payee is entitled to the funds, one must show that the remitter is not entitled to the funds. In this case, the trustee must show that the payee, Grand Cayman, possessed the check at the time of filing or endorsed the check before the time of filing. In the present case, whether the payee, Grand Cayman, possessed the cashier's check before the bankrupt filed his petition with this Court is still a question of material fact unanswered by the parties to this action. Accordingly, the Court cannot grant summary judgment on the basis of the trustee's second argument.

## III. THIRD PARTY OWNERSHIP OF FUNDS

The trustee argues thirdly that 1) "a bank may not exercise a right of setoff against funds if the bank knows of a third party's interest in the fund" and 2) "[t]he Bank's withdrawal of the money from Northwest's account in order to honor the check, combined with the naming of Grand Cayman Brokerage as the payee constitutes actual knowledge of the third party's right to the funds." Trustee's Memorandum at 12. For support, the trustee cites *Liberty Savings Assoc. v. Sun Bank of Jacksonville*, 572 F.2d 591 (7th Cir.1978); *Navajo Tribe v. Bank of New Mexico*, 556 F.Supp. 1 (D.N.M.1980), aff'd in part and remanded, 700 F.2d 1285 (10th Cir.1983); and *National Acceptance Co. v. Virginia Capital Bank*, 498 F.Supp. 1078 (E.D.Va. 1980). In *Navajo Tribe* mutuality did not exist because the court determined that the Navajo Tribe, a sovereign Indian nation which purchased a certificate of deposit

---

**2.** The trustee also predicates his argument on the theory that the issuance of a cashier's check creates a trust relationship which in turn de-

stroys a debtor-creditor relationship. As stated earlier, the Court disagrees with this theory.

from the Bank of New Mexico, and the Navajo Housing and Development Enterprise, a semi governmental entity, created by the Navajo Tribe, which borrowed money from the Bank of New Mexico, were separate legal entities. Accordingly, mutuality did not exist. 556 F.Supp. at 4. The analysis upon which the trustee relies is unsound dicta because the third party, Navajo Housing & Development Enterprise, never had any interest in the Navajo Tribe's certificate of deposit. In *Liberty Sav. Ass'n.*, the 7th Circuit merely addressed the bank's right of setoff out of a generous sense of fairness to the Bank's attorneys who failed to plead a setoff theory. 572 F.2d at 592. In *Nat. Acceptance Co. of America* the Court decided that the Bank could not set off a customer's deposit account because the Bank knew or should have known that the funds deposited therein were encumbered by liens of third parties. 498 F.Supp. at 1082. The trustee's cases do not stand for the cited proposition. The trustee's cases attempt to state the rule; the trustee's proposition expands the rule.

 The facts in the present case do not fit within the scope of the rule governing the setoff of funds which belong to a third party. "[It] is [a] well-settled rule that if a bank actually knows that sums deposited in the account of one of its debtors belong to a third person, it cannot apply such funds against the debtor's obligation to it." *Commercial Disc. Corp. v. Milw. Western Bank*, 61 Wis.2d 671, 680, 214 N.W.2d 33 (1974). The third party ownership of funds theory applies when a third party's funds are subsequently deposited in a debtor's deposit account. In the present case, the payee's interest in the funds did not arise before the funds were deposited in the bankrupt's deposit account; the payee's interest in the funds arose after the funds were deposited in the bankrupt's deposit account. In the present case, the funds were not located in the bankrupt's deposit account; the funds were located in the Bank's general account. Summary judgment should not be granted because the Court cannot determine from the record before it whether Grand Cayman's interest

in the funds arose before the bankrupt filed its bankruptcy petition. This would be true even if this Court agreed to expand the scope of the trustee's theory to include cases where third persons acquired a subsequent interest in an account and cases where any account, supported by an underlying obligation of a bank to a debtor, held a third party's fund. However, this Court declines to expand the law in such a manner absent any proof from counsel. Accordingly, the Court cannot agree with the trustee's application of a third party ownership of funds theory to the facts of this case.

## CONCLUSION

To summarize, the trustee argues that summary judgment should be granted because the mutuality of obligations necessary for setoff does not exist. The trustee contends that mutuality does not exist because the issuance of a cashier's check I) creates a special account, II) creates an obligation to a third party, and III) constitutes notice to the Bank of a third party's interest in the debtor's funds. The trustee based his first contention upon 1) a waiver theory, 2) a non-withdrawable funds theory, and 3) a trust theory. The trustee founded his second contention on a trust theory and an unknown fact. The trustee's third contention depended upon the scope of the rule. For reasons already stated in this opinion, the Court finds that 1) the issuance of a cashier's check does not waive a bank's right of setoff; 2) a remitter's limited access to the funds used to purchase the cashier's check does not determine whether the funds are held in a special or general account; 3) the issuance of a cashier's check does not create a trust relationship; 4) material issues of fact remain as to the Bank's obligation to Grand Cayman as payee at the time the bankrupt filed his bankruptcy petition, and 5) the facts fall outside the scope of the rule governing the setoff of funds belonging to third parties. The Court notes that its ruling is narrow and applies in many instances only to the theoretical basis of the trustee's argument. Furthermore, the

court refuses to rule at this time on whether the Bank may exercise its right of setoff because questions of fact still remain.

This decision shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 752.